**Le Greves v 54 W. 10th Owner LLC**

2025 NY Slip Op 32398(U)

July 8, 2025

Supreme Court, New York County

Docket Number: Index No. 161580/2023

Judge: Lyle E. Frank

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. LYLE E. FRANK**         PART               11M

*Justice*

-------------------------------------------------------------------------------X

JEAN-CHRISTOPHE LE GREVES

                  Plaintiff,

                  - v -

54 WEST 10TH OWNER LLC,

                  Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 161580/2023 |
| MOTION DATE | 05/18/2025 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 62, 63, 64, 65

were read on this motion to/for        RENEW/REARGUE/RESETTLE/RECONSIDER   .

Upon the foregoing documents, plaintiff's motion is granted in part.

## Background

On October 15, 2004, Jean-Christophe Le Greves ("Plaintiff") moved into Apartment 9 in the building owned by 54 West 10th Owner LLC ("Defendant"). Prior to 2000, there had been no registration filed under the rent stabilization laws for the apartment. From 2000 to 2004, the unit was registered as rent stabilized but temporarily exempt. From 2005 to 2007, the owner filed no registration for the unit. The apartment was listed as rent stabilized from 2008 to 2016, then from 2017 to 2022 the owner again failed to file any registration for the unit. Starting in at least 2016, Plaintiff was not offered rent stabilized lease renewals. In May of 2022, Plaintiff alleges that he was informed by an agent for Defendant that they did not recognize the unit's rent stabilized status. In September of 2023, Defendant posted a ninety-day notice of termination without mention to the rent stabilization laws.

### *Procedural Background*

[* 1]

Plaintiff filed the underlying proceeding in November of 2023, pleading several claims including rent overcharge and seeking a declaratory judgment as to the apartment's rent-regulated status. In their complaint, Plaintiff argued that "there was never a legal basis for deregulating the Apartment" and that "[w]hether the owner was attempting to engineer a fraudulent deregulation or not, the apartment remained stabilized" throughout the entire period at issue. For the overcharge claim, Plaintiff alleges that he was overcharged from 2017 through to 2023, with a total excess amount of $6,870.00. Defendant answered in December of 2023, and the parties exchanged discovery.

Plaintiff then moved for partial summary judgment on the claims relating to rent status and overcharge. Defendant cross-moved for summary judgment on these claims in their favor. In an order dated April 23, 2025 (the "April Order"), the Court denied Plaintiff's motion and granted Defendant's motion, dismissing the first, second, and third causes of action. In making this decision, the Court stated that Plaintiff's allegations were that the Defendant "improperly deregulated" the apartment in 2004 and reasoned that the overcharge and status claims must be dismissed as Plaintiff would have needed to allege fraud in order to lookback beyond the statute of limitations.

**Discussion**

Plaintiff brings the present motion to reargue the April Order, and Defendant opposes. Plaintiff's main argument is that the Court made an error in fact in characterizing their complaint as alleging that the apartment was improperly deregulated in 2004. He argues that because his "clear and consistent claim [has been] that the apartment was never deregulated", the allegations that the owner treated the unit in a manner inconsistent with a rent-regulated apartment (such as issuing non-rent regulated leases and overcharging rent) does not constitute an improper

deregulation for statute of limitations purposes. He argues that the "action for declaratory judgment was prompted by Defendants actions in 2022 and 2023", i.e., telling Plaintiff that they did not consider the unit to be rent regulated. Therefore, the events of 2004 would not impact his claim for a declaratory judgment as to the unit's regulatory status. For the reasons that follow, the motion to reargue is granted as to the first cause of action and denied as to the second and third causes of action.

### Motion to Reargue Standard of Review

CPLR § 2221(d) allows for a party to make a motion to reargue if it is "identified specifically as such" and requires that it be based "upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion but shall not include any matters of fact not offered on the prior motion."

### Statute of Limitations Bars the Overcharge Claims

When an owner fails to register rents with DHCR, they are "precluded from taking certain rent increases on the rent-stabilized accommodation until they properly file a registration." *Matter of LL 410 E. 78th St. LLC v. Division of Hous. & Community Renewal*, 2025 N.Y. LEXIS 339, *6 [2025]. When an overcharge claim for improper rent increases is filed, which may be done at any time, the overcharge calculation "shall be made in accordance with the provisions of law governing the determination and calculation of overcharges." CPLR § 213-a. When calculating such overcharges, a base date is used. *Simpson v. 16-26 E. 105, LLC*, 176 A.D.3d 418, 418 [1st Dept. 2019]; 9 NYCRR § 2526.7(a)(1). The general rule for determining a base date is that "the legal regulated rent is the rent registered with the Division of Housing and Community Renewal (DHCR) for the apartment six years before the overcharge proceeding was commenced." *Id*.

[* 3]

This six-year period comes from the 2019 Housing Stability and Tenant Protection Act of 2019 (HSPTA). Prior to HSPTA, "overcharge claims were subject to a four-year statute of limitations that precluded the recovery of overcharges incurred more than four years preceding the imposition of a claim." *Matter of Regina Metro. Co., LLC v. New York State Div. of Hous. & Community Renewal*, 35 N.Y.3d 332, 352 [2020]. The pre-HSPTA law also stated that there could be no determination of an overcharge award based on an overcharge having occurred more than four years prior to the claim initiation. It established a "lookback rule" that only permitted a reviewing court to look at rental history records "in the four years preceding the filing of the complaint." *Id*. Therefore, "[u]nder the pre-HSTPA law, the base date rent was therefore the rent actually charged on the base date – i.e., four years prior to the overcharge complaint – even if no registration statement had been filed reflecting that rent." *Id*. While a court could normally only look 4 years before the filing of the complaint to determine the base date and thus what the overcharge amount is, the Court of Appeals recognizes an exception to the lookback period for allegations that "the owner engaged in a fraudulent scheme to deregulate the apartment." *Id*.

To sum up: prior to the enactment of HSPTA, when an overcharge claim was brought, the amount of overcharges was calculated by comparing the rent charged four years prior to filing with the subsequent charges. To extend the lookback period and calculate overcharges from a base date more than four years prior to the filing of the complaint, a plaintiff would need to allege a fraudulent scheme to deregulate by the owner. Importantly for this case, in *Regina* the Court of Appeals held that the HSPTA did not apply retroactively and that overcharge claims are resolved "pursuant to the law in effect when the purported overcharges occurred." *Id*, at 349. Plaintiff's complaint argues that because the last lawfully registered rent for the unit was $2,530.00 in 2016, the leases starting in 2017 that exceeded that amount constitute an

overcharge. Here, Plaintiff states in the complaint that the base date is November 28, 2017, when the Defendant ceased filing rent registrations and began to charge Plaintiff in excess of the last registered rent amount.

In the April Order, the Court found that pre-HSPTA law applies, and that the Plaintiff was attempting to lookback to 2004 as an improper deregulation without alleging fraud as required by *Regina*. On reargument, Plaintiff essentially argues that failing to register rents with DHCR is not enough to effectually deregulate an apartment, therefore Defendant's actions in 2017 were not an improper deregulation. Plaintiff would thus not need to allege a fraudulent scheme, because there was no improper deregulation, and with no need to allege fraud his claims are not barred by the lookback period. But the issue is that because the alleged overcharges occurred pre-enactment of HSPTA, the Court can only look four years back from the filing of the complaint to determine the base rent. The Court does not need to reach the issue of whether Defendant's alleged actions constituted an improper deregulation in 2004 in determining whether the April Order correctly dismissed the rent overcharge claims. Because the complaint filed in November 2023 alleges that rent overcharges began in 2017, prior to 2019, the four-year lookback rule applies to determining the base rent.

It is not disputed that between October of 2019 (more than four years prior to the filing of the complaint) and 2023, Plaintiff was charged the same amount of rent, $2,650.00. It follows then that there are no overcharge damages when going off the base date of November 28, 2019. Under *Regina*, because the alleged overcharges predated the HSPTA, to extend the base date for overcharge calculation more than four years prior to the filing of the complaint a plaintiff would need to allege a fraudulent scheme. Here, there is no dispute that Plaintiff is, as he puts it,

"proceed[ing] on a nonfraud theory." Therefore, dismissal of the rent overcharge causes of action was proper, because there are no alleged overcharges under the applicable law.

Plaintiff's argument that the apartment was never actually deregulated, therefore the lookback period does not apply, does not avail. The case law states that damages for an overcharge claim brought under these circumstances (alleging overcharges prior to 2019) uses four years prior to the filing of the complaint as the base date. A court cannot look to rental records before that date in order to determine the overcharge damages. Plaintiff does not cite to a case standing for the proposition that if an apartment was never legally deregulated by an application to DHCR, an overcharge claim can then be brought using a base date outside the relevant lookback period (whether four or six years) absent an allegation of a fraudulent scheme to deregulate. While the Court may have erred in relying on 2004 as the base date in dismissing the overcharge claims, using the Plaintiff's own alleged base date leaves the overcharge claims with no damages, thus making dismissal of these claims proper.

### *The Rent Status Declaratory Judgment Cause of Action Should Have Been Granted*

While there may be no overcharge damages when using a pre-HPTSA statute of limitations because there is no alleged fraudulent scheme, in the April Order the Court erred in requiring such an allegation to sustain the claim for a declaratory judgment as to the unit's rent-regulated status. *Regina* did not apply the lookback period limitation to challenges brought to a deregulated status, and such claims are considered as distinguishable from overcharge claims. *Matter of AEJ 534 E. 88th, LLC v. New York State Div. of Hous. & Community Renewal*, 194 A.D.3d 464, 469 [1st Dept. 2021]. Even in cases where an overcharge claim is dismissed because of the lookback period, the unit's history can still be examined to determine rent-regulated status. *See, e.g., Nadler v. Carmine Ltd.*, 231 A.D.3d 485, 486 [1st Dept. 2024].

While Defendant cites to the footnote 6 in *Matter of LL 410* as requiring allegations of a fraudulent scheme in proceedings seeking a declaration as to rent regulation status, that footnote specifically states that "[i]n an overcharge proceeding a court could not examine whether the unit was lawfully deregulated in 2002 unless the tenant adequately alleged a fraudulent scheme." *Matter of LL 410 E. 78th St. LLC v. Division of Hous. & Community Renewal*, 2025 N.Y. LEXIS 339, * 13 n.6 [2025]. The Court is persuaded that this footnote does not extend the fraudulent scheme requirement found in overcharge proceedings to proceedings that are seeking a declaratory judgment as to rent regulation status. Because the April Order granted summary judgment to Defendant dismissing the first cause of action based on the lack of allegations of a fraudulent scheme and the lookback period, this portion of the motion to reargue should be granted.

The issue then becomes whether either side met their burden of proof for summary judgment in their favor on the issue of the unit's regulated status. The Court of Appeals has held that an owner's treatment of a unit as deregulated is not to be conflated with an apartment's legal status as regulated or deregulated. *Matter of LL 410* at *11. It is not disputed that the unit in question has never been legally registered as de-regulated by DHCR. Defendant has not kept up on submitting the rent registrations for the unit since 2016, but that is insufficient to legally deregulate an apartment. *See, e.g., Matter of 160 E. 84th St. Assoc. LLC v. New York State Div. of Hous. & Community Renewal*, 2024 N.Y. LEXIS 2018, * 9 [2024] (holding that "[a]partments can be removed from rent stabilization only through regular, officially authorized means.").

Furthermore, it is the "owner's burden to establish that an apartment's deregulation was proper." *Cox v. 36 S. Oxford St., LLC*, 237 A.D.3d 604, 605 [1st Dept. 2025]. The Defendant here has not established that the apartment was deregulated lawfully, and Plaintiff has submitted

a certified DHCR rent registration history for the unit, showing it as rent stabilized from 2008 to 2016, with no submission for the subsequent years. Therefore, Plaintiff met their burden for summary judgment on the first cause of action and is entitled to a declaratory judgment as to the unit's rent status. Finally, Defendant has initiated a holdover proceeding against Plaintiff in Housing Court, arguing that the apartment was deregulated. Plaintiff requests in their papers that this proceeding be stayed. The Court declines to do so at this time, but notes that this order will be issuing a judgment as to the apartment's status as a rent-regulated unit. Accordingly, it is hereby

ADJUDGED that the motion to reargue is granted in part; and it is further

ORDERED that the order of this Court in this matter dated April 23, 2025, be hereby amended to grant plaintiff's motion for summary judgment on the first cause of action and deny the defendant's cross-motion for summary judgment on the first cause of action; and it is further

ORDERED and DECLARED that the apartment located at 54 West 10th Street, New York, New York, Apartment # 9, is subject to the Rent Stabilization Law and Code.

20250708143140LFRANKB0B3A7C48BA34E9C8A11881374219CB6

**7/8/2025**
**DATE**

**LYLE E. FRANK, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |